**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **PRISCILLA AGUILAR,** | : | **Civil No. 3:21-CV-595** |
| | : | |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | **(Magistrate Judge Carlson)** |
| | : | |
| **WILLIAM MOYER, SR.,** | : | |
| | : | |
| **Defendant.** | : | |

**MEMORANDUM OPINION**

## I. Introduction

The instant case involves a lawsuit brought by Priscilla Aguilar against William Moyer, Sr., an employee of the Municipal Authority of the Borough of Shenandoah ("Water Authority"). Aguilar alleges a violation of her First Amendment rights under 42 U.S.C. § 1983, as well as state law battery, as a result of Moyer's actions in obstructing her ability to record the arrest of her husband. Moyer now moves to dismiss Aguilar's claims, arguing that the complaint fails on its face to state a claim against him. For the following reasons, Moyer's motion to dismiss will be denied.

## II. Statement of Facts and of the Case

The following facts are taken from the plaintiff's complaint, which we must accept as true for the purposes of this motion to dismiss. On April 5, 2019, Priscilla

Aguilar's husband, Carlos Figueroa, called Water Authority in an attempt to restore the water connection to the couple's house. (Doc. 1, ¶¶ 8-9). Though he was informed that no employees were available to restore the connection, Figueroa later noticed Moyer, a Water Authority employee, on the property. (Id., ¶ 11). Figueroa inquired as to whether Moyer "was there to turn the water on," to which Moyer responded he was there to ensure the water remained off. (Id., ¶¶ 12-13). Figueroa then asked whether Moyer could turn the water on, to which Moyer replied that he would "need a work order" to do so. (Id., ¶ 14). Figueroa expressed his anger over Water Authority's apparent misrepresentation of its employees' availability. (Id., ¶ 15). He then reentered the couple's house when Moyer threatened to call the police. (Id., ¶¶ 16-17).

Despite Figueroa's withdrawal from the conflict, Moyer called his son, "a patrolman with the Borough of Shenandoah Police Department," from his work truck. (Id., ¶ 18). Figueroa and Aguilar then left the house and entered their parked vehicle without starting the engine. (Id., ¶¶ 19-20). While the couple sat in their vehicle, Moyer exited his truck and photographed Aguilar, Figueroa, and their vehicle's license plate. (Id., ¶ 21).

About ten minutes after Moyer placed the call to his son, his son arrived in a police cruiser and asked Figueroa for identification. (Id., ¶¶ 22-23). Aguilar then began recording the interaction between Figueroa and Moyer's son using Figueroa's

cell phone. (Id., ¶ 24). Figueroa refused to produce identification, at which point Moyer's son "opened the door of the vehicle, grabbed [Figueroa] by the elbow and pulled him out, throwing him onto the ground." (Id., ¶¶ 25-26). In response to Figueroa's subsequent offer to produce identification, Moyer's son allegedly responded, "It's too late for that now." (Id., ¶ 28).

At this point, Moyer, in what the plaintiff characterizes as an apparent attempt to protect his son's reputation as a police officer, pushed Figueroa's cell phone out of Aguilar's hands. (Id., ¶¶ 29-31). Moyer then forcibly escorted Aguilar approximately 20 feet away from the scene of Figueroa's arrest. (Id., ¶ 32). After moving Aguilar away, Moyer then returned and placed his knee on Figueroa's back while his son handcuffed him. (Id., ¶ 33).

Following the above incident, Aguilar brought the instant lawsuit against Moyer for violating her First Amendment right to record police conduct and committing a series of batteries against her person. (Id., ¶ 43). Specifically, with regard to the first claim, Aguilar contends that Moyer's actions were retaliatory and a violation of her First Amendment rights under 42 U.S.C. § 1983. (Id., ¶ 41). Moyer now moves to dismiss Aguilar's claims, arguing that he did not act under color of state law in knocking the cell phone from Aguilar's hands, that he is entitled to qualified immunity, and that this court cannot exercise supplemental jurisdiction over the state law battery claim. (Doc. 9; Doc. 11).

This motion is fully briefed and is ripe for resolution. For the following reasons, we find that the complaint sufficiently alleges a § 1983 claim against Moyer, and thus we will deny the motion to dismiss.

## III. Discussion

### A. Motion to Dismiss – Standard of Review

A motion to dismiss tests the legal sufficiency of a complaint. It is proper for the court to dismiss a complaint in accordance with Rule 12(b)(6) of the Federal Rules of Civil Procedure only if the complaint fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). With respect to this benchmark standard for the legal sufficiency of a complaint, the United States Court of Appeals for the Third Circuit has aptly noted the evolving standards governing pleading practice in federal court, stating that:

> Standards of pleading have been in the forefront of jurisprudence in recent years. Beginning with the Supreme Court's opinion in Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007), continuing with our opinion in Phillips [v. County of Allegheny, 515 F.3d 224, 230 (3d Cir. 2008)], and culminating recently with the Supreme Court's decision in Ashcroft v. Iqbal, □U.S.□, 129 S. Ct. 1937 (2009), pleading standards have seemingly shifted from simple notice pleading to a more heightened form of pleading, requiring a plaintiff to plead more than the possibility of relief to survive a motion to dismiss.

Fowler v. UPMC Shadyside, 578 F.3d 203, 209-10 (3d Cir. 2009).

In considering whether a complaint fails to state a claim upon which relief may be granted, the court must accept as true all allegations in the complaint and all

reasonable inferences that can be drawn therefrom are to be construed in the light most favorable to the plaintiff. Jordan v. Fox, Rothschild, O'Brien & Frankel, Inc., 20 F.3d 1250, 1261 (3d Cir. 1994). However, a court "need not credit a complaint's bald assertions or legal conclusions when deciding a motion to dismiss." Morse v. Lower Merion Sch. Dist., 132 F.3d 902, 906 (3d Cir. 1997). Additionally, a court need not "assume that a . . . plaintiff can prove facts that the . . . plaintiff has not alleged." Associated Gen. Contractors of Cal. v. California State Council of Carpenters, 459 U.S. 519, 526 (1983). As the Supreme Court held in Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007), in order to state a valid cause of action, a plaintiff must provide some factual grounds for relief which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of actions will not do." Id., at 555. "Factual allegations must be enough to raise a right to relief above the speculative level." Id.

In keeping with the principles of Twombly, the Supreme Court has underscored that a trial court must assess whether a complaint states facts upon which relief can be granted when ruling on a motion to dismiss. In Ashcroft v. Iqbal, 556 U.S. 662 (2009), the Supreme Court held that, when considering a motion to dismiss, a court should "begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." Id., at 679. According to the Supreme Court, "[t]hreadbare recitals of the elements of a cause of

action, supported by mere conclusory statements, do not suffice." Id., at 678. Rather, in conducting a review of the adequacy of a complaint, the Supreme Court has advised trial courts that they must:

> [B]egin by identifying pleadings that because they are no more than conclusions are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

Id., at 679.

Thus, following Twombly and Iqbal, a well-pleaded complaint must contain more than mere legal labels and conclusions; it must recite factual allegations sufficient to raise the plaintiff's claimed right to relief beyond the level of mere speculation. As the United States Court of Appeals for the Third Circuit has stated:

> [A]fter Iqbal, when presented with a motion to dismiss for failure to state a claim, district courts should conduct a two-part analysis. First, the factual and legal elements of a claim should be separated. The District Court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions. Second, a District Court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a "plausible claim for relief." In other words, a complaint must do more than allege the plaintiff's entitlement to relief. A complaint has to "show" such an entitlement with its facts.

Fowler, 578 F.3d at 210-11.

As the Court of Appeals has observed:

> The Supreme Court in Twombly set forth the "plausibility" standard for overcoming a motion to dismiss and refined this approach in Iqbal. The plausibility standard requires the complaint to allege "enough facts to state a claim to relief that is plausible on its face." Twombly, 550 U.S. at 570, 127 S. Ct. 1955. A complaint satisfies the plausibility standard when the factual pleadings "allow[ ] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 129 S. Ct. at 1949 (citing Twombly, 550 U.S. at 556, 127 S. Ct. 1955). This standard requires showing "more than a sheer possibility that a defendant has acted unlawfully." Id. A complaint which pleads facts "merely consistent with" a defendant's liability, [ ] "stops short of the line between possibility and plausibility of 'entitlement of relief.' "

Burtch v. Milberg Factors, Inc., 662 F.3d 212, 220-21 (3d Cir. 2011), cert. denied, 132 S. Ct. 1861 (2012).

In practice, consideration of the legal sufficiency of a complaint entails a three-step analysis:

> First, the court must "tak[e] note of the elements a plaintiff must plead to state a claim." Iqbal, 129 S. Ct. at 1947. Second, the court should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth." Id., at 1950. Finally, "where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief."

Santiago v. Warminster Twp., 629 F.3d 121, 130 (3d Cir. 2010) (quoting Iqbal, 129 S. Ct. at 1950).

In considering a motion to dismiss, the court generally relies on the complaint, attached exhibits, and matters of public record. Sands v. McCormick, 502 F.3d 263, 268 (3d Cir. 2007). The court may also consider "undisputedly authentic document[s] that a defendant attached as an exhibit to a motion to dismiss if the

plaintiff's claims are based on the [attached] documents." Pension Benefit Guar. Corp. v. White Consol. Indus., 998 F.2d 1192, 1196 (3d Cir. 1993). Moreover, "documents whose contents are alleged in the complaint and whose authenticity no party questions, but which are not physically attached to the pleading, may be considered." Pryor v. Nat'l Collegiate Athletic Ass'n, 288 F.3d 548, 560 (3d Cir. 2002); see also U.S. Express Lines, Ltd. v. Higgins, 281 F.3d 382, 388 (3d Cir. 2002) (holding that "[a]lthough a district court may not consider matters extraneous to the pleadings, a document integral to or explicitly relied upon in the complaint may be considered without converting the motion to dismiss in one for summary judgment"). However, the court may not rely on other parts of the record in determining a motion to dismiss, or when determining whether a proposed amended complaint is futile because it fails to state a claim upon which relief may be granted. Jordan v. Fox, Rothschild, O'Brien & Frankel, 20 F.3d 1250, 1261 (3d Cir. 1994).

**B. This Motion to Dismiss Should Be Denied.**

Aguilar first claims that Moyer violated her First Amendment rights under 42 U.S.C. § 1983. This statute provides, in relevant part, that:

> Every person who, under color of [state law] subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress…

42 U.S.C. § 1983.

After a review of the record, we conclude that dismissal at this stage of the proceedings would be inappropriate. The pleadings as they stand do not permit of an answer as a matter of law as to whether Moyer acted under color of state law at the time of this incident. Furthermore, without some further factual development we cannot conclude that Moyer is entitled to qualified immunity, and we will retain supplemental jurisdiction over the state law battery claim. Accordingly, this motion to dismiss will be denied.

### 1. Factual Issues Do Not Allow Us to Conclude that Moyer Did Not Act Under Color of State Law

Moyer first argues that he did not act under color of state law in pushing the phone from Aguilar's hands. At this stage of the proceedings, we cannot conclude that Moyer's actions fell outside the color of law.

In order to claim First Amendment retaliation, a plaintiff:

> Must show (1) that [the defendant] engaged in a protected activity, (2) that defendant['s] retaliatory action was sufficient to deter a person of ordinary firmness from exercising his or her rights, and (3) that there was a causal connection between the protected activity and the retaliatory action. A defendant may defeat the claim of retaliation by showing that it would have taken the same action even if the plaintiff had not engaged in the protected activity.

Lauren W. v. DeFlaminis, 480 F.3d 259, 267 (3d Cir. 2007) (citations omitted). As we have explained, Moyer argues that the plaintiff has not stated a claim against him under § 1983 because he was not acting under color of state law. We disagree.

We note at the outset that "action under state law must be addressed after considering the totality of the circumstances and cannot be limited to a single factual question." Harvey v. Plains Twp. Police Dep't, 635 F.3d 606, 607 (3d Cir. 2011). However, "the traditional definition of action under color of state law… requires that one liable under § 1983 'have exercised power possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law.'" Abbott v. Latshaw, 164 F.3d 141, 146 (3d Cir. 1998) (quoting West v. Atkins, 487 U.S. 42, 49 (1988)). Additionally, while "purely private acts which are not furthered by any actual or purported state authority are not acts under color of state law," it is also true that "acts of a state or local employee in [his] official capacity will generally be found to have occurred under color of state law… whether the complained of conduct was in furtherance of the state's goals or constituted an abuse of official power." Barna v. City of Perth Amboy, 42 F.3d 809, 815-16 (3d Cir. 1994) (citations omitted). The Third Circuit has held that "a state employee who pursues purely private motives *and* whose interaction with the victim is unconnected with his execution of his official duties does not act under color of law." Bonenberger v. Plymouth Twp., 132 F.3d 20, 24 (3d Cir. 1997) (emphasis added).

In the instant case, we cannot conclude on the pleadings alone that Moyer did not act under color of state law. It is undisputed that Moyer holds a position as a government employee. For his part, Moyer argues that he acted "in a purely private,

individual capacity" in interfering with Aguilar's recording of her husband's arrest. (Doc. 11, at 11). However, according to the complaint, on the day of the incident Moyer told Figueroa that he was at the residence "to make sure the water was *off*." (Doc. 1, ¶ 13). This would suggest that Moyer was at the residence in his capacity as a Water Authority employee. Further, Moyer's action—hitting the phone out of Aguilar's hand—was intertwined with several other actions, including contacting police and interfering with the subsequent arrest by escorting Aguilar away and incapacitating Figueroa. These actions raise questions as to whether Moyer's threat of police intervention would have been possible without his presence as a Water Authority employee, as well as whether he used his official position as authority to assist with an arrest. Indeed, on the pleadings alone, it is impossible to extricate one action—knocking the cell phone from Aguilar's hands—from the totality of the circumstances of the entire incident. See e.g., DeForte v. Borough of Worthington, 2017 WL 2445890, at *14 (W.D. Pa. June 6, 2017) (denying a motion to dismiss where it was unclear whether the defendant, a municipal employee, was acting under color of state law).

Thus, the events leading to the instant case do not permit an answer as a matter of law based upon the pleadings with respect to Moyer's involvement in this episode a a Water Authority employee, and it cannot be said as a matter of law at this early stage of the case that Moyer was not acting under color of state law for purposes of

§ 1983. We therefore cannot conclude that the plaintiff has failed to satisfy this element of her First Amendment claim. Accordingly, we will deny the defendant's motion to dismiss with respect to Aguilar's First Amendment claim.

**2. Moyer is Not Entitled to Qualified Immunity.**

Moyer alternatively argues that he is entitled to qualified immunity from Aguilar's First Amendment claim. At this juncture we cannot determine the extent to which qualified immunity may be available to Moyer.

"Qualified immunity shields government officials from civil damages liability unless the official violated a statutory or constitutional right that was clearly established at the time of the challenged conduct." Reichle v. Howards, 566 U.S. 658, 664 (2012). A qualified immunity analysis involves two questions: whether the official violated a statutory or constitutional right, and whether that right was clearly established at the time of the challenged conduct. Ashcroft v. al-Kidd, 563 U.S. 731, 735 (2011). Lower courts have the discretion to decide which question to analyze first. Pearson v. Callahan, 555 U.S. 223, 236 (2009). The Supreme Court has cautioned courts to "think carefully before expending scarce judicial resources to resolve difficult and novel questions of constitutional or statutory interpretation that will have no effect on the outcome of the case." Id. (internal quotations omitted); see also al-Kidd, 563 U.S. at 735.

An official's conduct violates clearly established law when, "at the time of the challenged conduct, '[t]he contours of [a] right [are] sufficiently clear' that every 'reasonable official would [have understood] that what he is doing violates that right.'" al-Kidd, 563 U.S. at 741 (quoting Anderson v. Creighton, 483 U.S. 635, 640 (1987)). The Supreme Court has stated that this standard does not require a case directly on point but requires that "existing precedent must have placed the statutory or constitutional question beyond debate." al-Kidd, 563 U.S. at 741. "When properly applied, [qualified immunity] protects all but the plainly incompetent or those who knowingly violate the law." Id. at 743 (quoting Malley v. Briggs, 475 U.S. 335, 341 (1986)); see also Taylor v. Barkes, 575 U.S. 822 (2015).

The dispositive question that the court must ask is "whether the violative nature of particular conduct is clearly established." Mullenix v. Luna, 577 U.S. 7, 12 (2015) (quoting al-Kidd, 563 U.S. at 742). The inquiry "must be undertaken in light of the specific context of the case, not as a broad general proposition." Id.; see also Davenport v. Borough of Homestead, 870 F.3d 273, 281 (3d Cir. 2017). This "clearly established" standard ensures that an official can reasonably anticipate when his or her conduct may give rise to liability, and "protects the balance between vindication of constitutional rights and government officials' effective performance of their duties." Reichle, 566 U.S. at 664.

Here, Moyer argues that Aguilar has not sufficiently pled a constitutional violation against him, relying on his assertion that he did not act under color of state law. However, as previously discussed, we cannot conclude on the pleadings that Moyer did not act under color of state law, given that the circumstances of Moyer's actions in interfering with Aguilar's recording are far from clear. In the alternative, Moyer argues that there is no clearly established law stating that government officials outside of law enforcement can be liable for retaliating against individuals who record police activity. However, we reject this narrow reading and find that the right to record police activity was clearly established at the time of the underlying incident in 2019.

The right of individuals to record public police activity has been clearly established within the Third Circuit since 2017. See Fields v. City of Philadelphia, 862 F.3d 353, 359 (3d Cir. 2017) ("recording police activity in public falls squarely within the First Amendment right of access to information"). In upholding this right, Fields ruled that:

> The First Amendment protects the public's right of access to information about their officials' public activities. It "goes beyond protection of the press and the self-expression of individuals to prohibit *government* from limiting the stock of information from which members of the public may draw."

Id. (quoting First Nat'l. Bank of Bos. v. Bellotti, 435 U.S. 765, 783 (1978)) (emphasis added). This holding does not distinguish between the actions of law

enforcement and other government officials; rather, the Fields court openly acknowledged the applicability of its ruling to all "government" officials, regardless of position. Id.; see also Karns v. Shanahan, 879 F.3d 504, 524 n.12 (3d Cir. 2018) (granting qualified immunity to transit officers but noting that the challenged conduct of prohibiting recording of police activity occurred *before* Fields); Contreras v. Conrad, No. 3:17-CV-02360, 2020 WL 2193429, at *10 (M.D. Pa. May 6, 2020)(same). Moyer's argument that "there is no legal authority that would put a municipal water employee on notice" of his potential liability for interfering with others' rights to record police activity therefore lacks merit. While most of the Third Circuit's cases on this topic address the actions of police officers, this does not preclude the Fields ruling from extending to an individual like Moyers, a municipal water employee who is alleged to have requested police intervention, then taken affirmative steps to prevent the recording of this police activity while actively intervening in this law enforcement encounter. At a minimum a qualified immunity determination, like a state action evaluation, should await some furth development of the factual record. Because we read Fields as prohibiting interference with the right to record police activities by government employees generally, we find that the right was clearly established at the time of the incident in 2019, and Moyer is not entitled to qualified immunity based solely upon the pleadings.

Finally, because we have found that, at the pleading stage, Aguilar has sufficiently alleged a First Amendment retaliation claim, Moyer's argument that this court should decline to exercise supplemental jurisdiction over the state law battery claim is unpersuasive. Accordingly, we will deny the motion to dismiss in its entirety.

## IV. Conclusion

Accordingly, for the foregoing reasons, the defendants' motion to dismiss (Doc. 9) will be DENIED.

An appropriate order follows.

*s/ Martin C. Carlson*
Martin C. Carlson
United States Magistrate Judge