## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| PRISCILLA AGUILAR, | : | Civil No. 3:21-CV-595 |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | (Magistrate Judge Carlson) |
| | : | |
| WILLIAM MOYER, SR., | : | |
| | : | |
| Defendant. | : | |

## MEMORANDUM OPINION

## I.    Introduction

This case comes before us on a motion for summary judgment filed by the defendant, William Moyer, Sr. (Doc. 36). The plaintiff, Priscilla Aguilar, brought this action against Mr. Moyer, alleging that he retaliated against her in violation of the First Amendment when he interfered with her attempts to record her husband's arrest by Mr. Moyer's son, William Moyer, Jr (hereinafter "Officer Moyer").[1] (Doc. 1). She also asserts a state law battery claim against Moyer, asserting that he physically escorted her away from the area of her husband's arrest and attempted to take her cellphone away from her during the arrest. (Id.)

---

[1] Carlos Figueroa, Aguilar's husband, has filed a separate suit against Mr. Moyer, Officer Moyer, and the Borough of Shenandoah arising out of these events. Figueroa v. Moyer, Sr., et al., No. 3:21-cv-00601.

Mr. Moyer has now filed a motion for summary judgment, contending that there are no genuine factual disputes regarding the claims in this case, and thus, he is entitled to judgment as a matter of law on these claims. (Doc. 36). However, we find that this case is rife with factual disputes which would render summary judgment inappropriate. Accordingly, for the foregoing reasons, the defendant's motion will be denied.

## II.    <u>Statement of Facts and of the Case</u>[2]

Ms. Aguilar and her husband, Mr. Figueroa, owned a property at 34 S. Emerick Street in Shenandoah, Pennsylvania. They were performing work at the property and had been attempting to get water services turned on. After a few misunderstandings regarding an unpaid security deposit, Mr. Figueroa called the Water Authority on April 5, 2019 to have the water turned on. He was informed by Jennifer Hepler, a Water Authority employee, that they could not turn the water on that day, but that they could schedule an employee to turn the water on the next business day, which at that time, would have been the following Monday, April 8, 2019. According to the defendant, the Water Authority has a practice of not scheduling a work order on the same day that someone calls for services, but to

---

[2] The factual background of this Memorandum Opinion is taken from the parties' submissions to the extent they are consistent with the evidence in the record. (Docs. 36-43, 46).

schedule it on the next business day. Additionally, a recording of this phone call indicates that Hepler told Figueroa that they did not have any openings that day.

Mr. Figueroa expressed his dissatisfaction with the Water Authority, which included swearing at Ms. Hepler and asking if he could just turn the water on himself. Hepler informed him that he was not permitted to turn the water on himself, and that if he did, he could be arrested for theft of services. She was able to schedule an appointment for Figueroa for the following Monday, April 8. However, Figueroa again swore at Hepler because he could not have the water turned on that day, causing Hepler to hang up the phone. Figueroa called back, confirming the appointment for April 8 but again asking about turning the water on himself, and Hepler again told him that he could be arrested for theft of services. A similar encounter ensued, with Figueroa swearing at Hepler and Hepler hanging up the phone.

Following these phone conversations between Figueroa and Hepler, the Water Authority sent Mr. Moyer, a working foreman with the Water Authority, to the Emerick Street property to ensure that the water had not been turned on. According to Mr. Moyer, when he arrived at the property, Figueroa and Aguilar, as well as two other people—Aguilar and Figueroa's son, Carlos, and Carlos' friend—were exiting the property. Mr. Moyer contends that Figueroa began cursing at him, asking why he could not just turn the water on that day. Mr. Moyer avers that he was

concerned for his safety, given that there were four individuals there, and so he went back to his car and called his son, Officer Moyer, who he knew was on duty that day. He also took a picture of Figueroa's license plate in the event Figueroa decided to leave the property before police arrived.

Ms. Aguilar's and Mr. Figueroa's version of events differs from Mr. Moyer's. On this score, Aguilar disputes the nature of the argument between Figueroa and Mr. Moyer. Further, Figueroa stated that Mr. Moyer used racially derogatory words toward Aguilar during this encounter. After Mr. Moyer announced that he was calling the police, Aguilar and Figueroa went and sat in their car and began recording Mr. Moyer, who was standing at the rear of his truck.

Officer Moyer arrived on the scene, and initially went to Mr. Moyer's truck to speak with him. Dash cam footage from Officer Moyer's marked police vehicle shows Officer Moyer then walking up to Figueroa's car on the driver's side, where Figueroa was sitting. Figueroa recorded the encounter on his cellphone. Officer Moyer asked Figueroa what was going on, and Figueroa again complained that Mr. Moyer would not turn the water on at the property. Figueroa then stated to Officer Moyer that he was not afraid of him, and when Officer Moyer asked Figueroa for identification, Figueroa refused. Officer Moyer asked Figueroa several times for his identification, explaining that he was investigating a potential crime. After Figueroa continued to refuse, Officer Moyer ordered him to step out of the vehicle. Figueroa

did not comply with Officer Moyer's order, and instead, offered to give Officer Moyer his identification at that time. However, after Figueroa continued to refuse to step out of the car, Officer Moyer pulled Figueroa out of the car by his left arm, and a struggle ensued, during which Figueroa dropped the cellphone that was recording the incident.

While the struggle and subsequent events were not captured on video on the cellphone, the cellphone's audio recording, as well as the police car's dash cam audio recording sheds some, albeit enigmatic, light on what occurred. The dash cam footage shows Mr. Moyer moving toward Officer Moyer and Figueroa as the two began to struggle.[3] Officer Moyer can be heard ordering Figueroa to get on the ground and to put his hands behind his back. Officer Moyer can also be heard yelling "back up," while Aguilar was yelling something to him, and Figueroa yelled "leave them." Mr. Moyer can be heard asking Aguilar "do you want to go to jail, too?" Mr. Moyer ultimately did assist Officer Moyer with the arrest, holding Figueroa down so that Officer Moyer could handcuff him.

According to Aguilar, it was at this time that Mr. Moyer was physically intervening to prevent her from picking up Figueroa's cellphone to continue

_____

[3] Officer Moyer pulled Figueroa out of the vehicle, at which point the two men were in between the police car and Figueroa's car. The struggle appears to have occurred toward the rear of the vehicles, as the two men disappear from the dash cam's view during the struggle. Mr. Moyer can also be seen walking toward the struggle and also disappears out of sight of the dash cam's view.

recording the arrest. She contends that Mr. Moyer physically pushed her back onto the sidewalk, and that after she was able to pick up the phone, he physically tried to take the phone out of her hands. However, according to Mr. Moyer, Aguilar tried to intervene in the arrest, and Mr. Moyer physically separated her from Officer Moyer and Figueroa to prevent any harm to Officer Moyer. During the video, Aguilar can be heard telling someone "you can't take this phone away from me," while Figueroa can be heard yelling "why is he touching my wife?" At this same time, Officer Moyer is yelling at someone to "stop!" Eventually, Figueroa was taken to the police station and then to the Schuylkill County Prison, having been charged with several offenses, including resisting arrest and making terroristic threats, charges which were ultimately dismissed.

Thus, what we are presented with are two starkly contrasting factual narratives of what occurred during Figueroa's arrest. On the one hand, Aguilar and Figueroa's version of events paints Mr. Moyer as being physically aggressive with Aguilar when she was simply attempting to retrieve Figueroa's phone after he dropped it in the struggle. After Aguilar was able to retrieve the phone, Mr. Moyer again was physically aggressive with her, attempting to take the phone from her hands in an attempt to keep her from recording the arrest. Mr. Moyer's version, however, casts Aguilar in an entirely different light. Mr. Moyer contends that Aguilar was physically intervening in the arrest, and that he had to physically separate her from

Officer Moyer and pushed her onto the sidewalk. According to Mr. Moyer, he was not trying to keep Aguilar from recording, but rather was trying to keep Officer Moyer out of harm's way while he was arresting Figueroa.

It is against this factual backdrop that Aguilar filed the instant suit against Mr. Moyer. She brings claims of First Amendment retaliation and state law battery against the defendant, alleging that Mr. Moyer interfered with her First Amendment right to record police activity in order to protect his son, Officer Moyer, and further, that Mr. Moyer committed a battery against her when he pushed her onto the sidewalk and attempted to take her phone away from her. Mr. Moyer has filed the instant motion for summary judgment, arguing that these claims fail as a matter of law. (Doc. 36). The motion is fully briefed and is ripe for resolution. (Docs. 37-43, 46). After consideration, we find that the myriad of factual disputes surrounding this police encounter precludes the entry of summary judgment in favor of the defendant on these claims. Accordingly, we will deny the motion for summary judgment.

## III.   <u>Discussion</u>

### A. <u>Motion for Summary Judgment – Standard of Review</u>

The defendant has moved for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure, which provides that the court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a).

Through summary adjudication, a court is empowered to dispose of those claims that do not present a "genuine dispute as to any material fact," Fed. R. Civ. P. 56(a), and for which a trial would be "an empty and unnecessary formality." Univac Dental Co. v. Dentsply Int'l, Inc., 702 F.Supp.2d 465, 468 (M.D. Pa. 2010). The substantive law identifies which facts are material, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A dispute about a material fact is genuine only if there is a sufficient evidentiary basis that would allow a reasonable fact finder to return a verdict for the non-moving party. Id., at 248-49.

The moving party has the initial burden of identifying evidence that it believes shows an absence of a genuine issue of material fact. Conoshenti v. Pub. Serv. Elec. & Gas Co., 364 F.3d 135, 145-46 (3d Cir. 2004). Once the moving party has shown that there is an absence of evidence to support the non-moving party's claims, "the non-moving party must rebut the motion with facts in the record and cannot rest solely on assertions made in the pleadings, legal memoranda, or oral argument." Berckeley Inv. Group. Ltd. v. Colkitt, 455 F.3d 195, 201 (3d Cir. 2006), accord Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986). If the non-moving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden at trial," summary

judgment is appropriate. Celotex, 477 U.S. at 322. Summary judgment is also appropriate if the non-moving party provides merely colorable, conclusory, or speculative evidence. Anderson, 477 U.S. at 249. There must be more than a scintilla of evidence supporting the non-moving party and more than some metaphysical doubt as to the material facts. Id., at 252; see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). In making this determination, the Court must "consider all evidence in the light most favorable to the party opposing the motion." A.W. v. Jersey City Pub. Schs., 486 F.3d 791, 794 (3d Cir. 2007).

Moreover, a party who seeks to resist a summary judgment motion by citing to disputed material issues of fact must show by competent evidence that such factual disputes exist. Further, "only evidence which is admissible at trial may be considered in ruling on a motion for summary judgment." Countryside Oil Co., Inc. v. Travelers Ins. Co., 928 F. Supp. 474, 482 (D.N.J. 1995). Similarly, it is well-settled that: "[o]ne cannot create an issue of fact merely by . . . denying averments . . . without producing any supporting evidence of the denials." Thimons v. PNC Bank, NA, 254 F. App'x 896, 899 (3d Cir. 2007) (citation omitted). Thus, "[w]hen a motion for summary judgment is made and supported . . ., an adverse party may not rest upon mere allegations or denial." Fireman's Ins. Co. of Newark New Jersey v. DuFresne, 676 F.2d 965, 968 (3d Cir. 1982); see Sunshine Books, Ltd. v. Temple University, 697 F.2d 90, 96 (3d Cir. 1982). "[A] mere denial is insufficient to raise a disputed issue

of fact, and an unsubstantiated doubt as to the veracity of the opposing affidavit is also not sufficient." Lockhart v. Hoenstine, 411 F.2d 455, 458 (3d Cir. 1969). Furthermore, "a party resisting a [Rule 56] motion cannot expect to rely merely upon bare assertions, conclusory allegations or suspicions." Gans v. Mundy, 762 F.2d 338, 341 (3d Cir. 1985) (citing Ness v. Marshall, 660 F.2d 517, 519 (3d Cir. 1981)).

Finally, it is emphatically not the province of the court to weigh evidence or assess credibility when passing upon a motion for summary judgment. Rather, in adjudicating the motion, the court must view the evidence presented in the light most favorable to the opposing party, Anderson, 477 U.S. at 255, and draw all reasonable inferences in the light most favorable to the non-moving party. Big Apple BMW, Inc. v. BMW of North America, Inc., 974 F.2d 1358, 1363 (3d Cir. 1992). Where the non-moving party's evidence contradicts the movant's, then the non-movant's must be taken as true. Id. Additionally, the court is not to decide whether the evidence unquestionably favors one side or the other, or to make credibility determinations, but instead must decide whether a fair-minded jury could return a verdict for the plaintiff on the evidence presented. Anderson, 477 U.S. at 252; see also Big Apple BMW, 974 F.2d at 1363. In reaching this determination, the Third Circuit has instructed that:

> To raise a genuine issue of material fact . . . the opponent need not match, item for item, each piece of evidence proffered by the movant. In practical terms, if the opponent has exceeded the "mere scintilla" threshold and has offered a genuine issue of material fact, then the court

cannot credit the movant's version of events against the opponent, even if the quantity of the movant's evidence far outweighs that of its opponent. It thus remains the province of the fact finder to ascertain the believability and weight of the evidence.

Id. In contrast, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (internal quotation marks omitted); NAACP v. North Hudson Reg'l Fire & Rescue, 665 F.3d 464, 476 (3d Cir. 2011).

## B. **The Defendant's Motion for Summary Judgment will be Denied.**

As we have noted, the defendant contends that Ms. Aguilar's claims against him fail as a matter of law for a host of reasons. On this score, Mr. Moyer claims that he was not acting under color of state law for purposes of § 1983; that Ms. Aguilar was not engaged in an activity protected under the First Amendment; that he is entitled to qualified immunity on the First Amendment claim; and that any contact he made with Aguilar's person was privileged, and therefore, not a battery because he was acting for the purpose of protecting the arresting officer. As we will discuss in more detail below, we find that the litany of factual disputes in this case would render summary judgment on these claims in favor of Mr. Moyer inappropriate. Accordingly, this motion will be denied.

### 1.  <u>Mr. Moyer was Acting under Color of State Law.</u>

Aguilar's First Amendment claim against Moyer alleges that his actions violated § 1983, which provides in relevant part that:

> Every person who, under color of any statute ... of any State ... subjects, or causes to be subjected, any citizen of the United States ... to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured[.]

42 U.S.C. § 1983.

It is well established that § 1983 does not by its own force create new and independent legal rights to damages in civil rights actions. Rather, § 1983 simply serves as a vehicle for private parties to bring civil actions to vindicate violations of separate, and pre-existing, legal rights otherwise guaranteed under the Constitution and laws of the United States. <u>Albright v. Oliver</u>, 510 U.S. 266, 271 (1994); <u>Graham v. Connor</u>, 490 U.S. 386, 393-94 (1989). Accordingly, any analysis of the legal sufficiency of a cause of action under § 1983 must begin with an assessment of the validity of the underlying constitutional and statutory claims advanced by the plaintiff.

In this regard, it is also well settled that:

> Section 1983 provides a remedy for deprivations of federally protected rights caused by persons acting under color of state law. The two essential elements of a § 1983 action are: (1) *whether the conduct complained of was committed by a person acting under color of state law*; and (2) whether this conduct deprived a person of a federally protected right. <u>Parratt v. Taylor</u>, 451 U.S. 527, 535 (1981).

Boykin v. Bloomsburg University of Pennsylvania, 893 F.Supp. 409, 416 (M.D. Pa. 1995), aff'd, 91 F3d 122 (3d Cir. 1996) (emphasis added).  Therefore, it is essential to any civil rights claim brought under § 1983 that the plaintiff allege and prove that the defendant was acting under color of law when that defendant allegedly violated the plaintiff's rights The requirement of state action is a "threshold issue" in cases brought under section 1983, Bailey v. Harleysville National Bank & Trust, 188 F. App'x 66, 67 (3d Cir. July 18, 2006), because "there is no liability under § 1983 for those not acting under color of law." Groman v. Twp. of Manalapan, 47 F.3d 628, 638 (3d Cir. 1995). In this regard:

> "Under color of law" and "state action" are interpreted identically under the Fourteenth Amendment. Thus, a plaintiff seeking to hold an individual liable under § 1983 must establish that she was deprived of a federal constitutional or statutory right by a state actor.

Kach v. Hose, 589 F.3d 626, 646 (3d Cir. 2009) (citing Benn v. Universal Health Sys., 371 F.3d 165, 169–70 (3d Cir. 2004)).

In making this determination of whether a private party may be considered a state actor, " '[t]he nominally private character' of an entity may be 'overborne by the pervasive entwinement of public institutions and public officials in its composition and workings' such that 'there is no substantial reason to claim unfairness in applying constitutional standards to it.' " Tulp v. Educ. Comm'n for Foreign Med. Graduates, 376 F. Supp. 3d 531, 539–40 (E.D. Pa. 2019) (quoting Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n, 531 U.S. 288, 298

(2001)). Thus, private action may transform into state action when: "the private party has acted with the help of or in concert with state officials," "the private party has been delegated a power traditionally exclusively reserved to the State," or "there is a sufficiently close nexus between the State and the challenged action of the private entity so that the action of the latter may fairly be treated as that of the State itself." Tulp, 376 F.Supp.3d at 540. However, the plaintiff must assert well-pleaded facts demonstrating such an inextricably intertwined relationship. Id.

In the instant case, we must decline the defendant's invitation to conclude as a matter of law that Mr. Moyer was not acting under color of state law. Indeed, it is undisputed that Mr. Moyer was at the property in his capacity as a Water Authority employee and that he was there to ensure that the water was off. Further, Mr. Moyer himself stated that he called his son, Officer Moyer, so that he could safely check to make sure the water was off, as he felt threatened by Figueroa and the other individuals at the property. (Doc. 37-2, at 7). On this score, Mr. Moyer further testified at Figueroa's preliminary hearing that "[w]e call the police numerous times when we go to houses" because theft of services was a major problem in the Shenandoah area, and that calling the police "[wa]s our policy." (Doc. 37-10, at 3). This call to the police, which we find Mr. Moyer made as an employee of the Water Authority for the purpose of performing his job duties, is inextricably intertwined

14

with the subsequent events during which Mr. Moyer pushed Aguilar back toward the sidewalk and then physically attempted to take her phone from her.

Thus, we conclude as we did in our prior Memorandum Opinion at the motion to dismiss stage, that "it is impossible to extricate one action—knocking the cell phone from Aguilar's hands—from the totality of the circumstances of the entire incident." (Doc. 23, at 11). Accordingly, we cannot conclude as a matter of law that Mr. Moyer was not acting under color of state law for purposes of § 1983.

## 2. **Factual Disputes Preclude Summary Judgment on Aguilar's First Amendment Claim.**

We further conclude that factual disputes preclude summary judgment on Aguilar's First Amendment claim. As we have explained, Aguilar contends that Mr. Moyer retaliated against her by attempting to take her phone from her when she was recording Figueroa's arrest by Officer Moyer. In order to claim First Amendment retaliation, a plaintiff:

> Must show (1) that [the defendant] engaged in a protected activity, (2) that defendant['] retaliatory action was sufficient to deter a person of ordinary firmness from exercising his or her rights, and (3) that there was a causal connection between the protected activity and the retaliatory action. A defendant may defeat the claim of retaliation by showing that it would have taken the same action even if the plaintiff had not engaged in the protected activity.

Lauren W. v. DeFlaminis, 480 F.3d 259, 267 (3d Cir. 2007) (citations omitted).

For his part, Mr. Moyer contends that Aguilar was not engaged in a protected activity because she was not recording police activity, she was not deterred from

recording, and that there is no causal connection between a protected activity and a retaliatory action. Further, he contends that he is entitled to qualified immunity because it was not clearly established that Aguilar had the right to record if that recording interfered with police activity.

The doctrine of qualified immunity protects government officials from liability for civil damages "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Pearson v. Callahan, 555 U.S. 223, 231 (2009). "Qualified immunity balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." Id. Qualified immunity "provides ample protection to all but the plainly incompetent or those who knowingly violate the law." Malley v. Briggs, 475 U.S. 335, 341 (1986). "Thus, so long as an official reasonably believes that his conduct complies with the law, qualified immunity will shield that official from liability." Sharp v. Johnson, 669 F.3d 144, 159 (3d Cir. 2012) (citing Pearson, 555 U.S. at 244). Although qualified immunity is generally a question of law that should be considered at the earliest possible stage of proceedings, a genuine dispute of material fact may preclude summary judgment on qualified immunity. Giles v. Kearney, 571 F.3d 318, 325-26 (3d Cir. 2009).

Qualified immunity shields officials from liability for civil damages brought pursuant to section 1983 "so long as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Bland v. City of Newark, 900 F.3d 77, 83 (3d Cir. 2018) (quoting Mullenix v. Luna, 577 U.S. 7, 11 (2015)). The official seeking qualified immunity has the burden of establishing their entitlement to the affirmative defense. Halsey v. Pfeiffer, 750 F.3d 273, 288 (3d Cir. 2014) (citing Reedy v. Evanson, 615 F.3d 197, 223 (3d Cir. 2010)). To determine whether an official is entitled to the affirmative defense of qualified immunity for a section 1983 claim, a court must determine (1) whether the official violated a constitutional right and, if so, (2) whether the right was clearly established. Saucier v. Katz, 533 U.S. 194, 201 (2001), overruled in part by Pearson, 555 U.S. at 236 (permitting federal courts to exercise discretion in deciding which of the two Saucier prongs should be addressed first).

A right is clearly established if "every reasonable official would have understood that what he is doing violates that right." Mullenix, 577 U.S. at 11. To be clearly established, there does not have to be a case that is directly on point, "but existing precedent must have placed the statutory or constitutional question beyond debate." Id. (quoting Ashcroft v. Al-Kidd, 563 U.S. 731, 741 (2011)). In determining whether a right is clearly established, courts must not define the right "at a high level of generality." Id. (quoting Al-Kidd, 563 U.S. at 742, 131 S.Ct. 2074.) Rather, the

analysis should focus on "whether the violative nature of particular conduct is clearly established." Id. (quoting Al-Kidd, 563 U.S. at 742). On this score, "[t]he relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." Saucier, 533 U.S. at 202. It is the plaintiff who bears the initial burden of demonstrating that the constitutional right at issue was clearly established at the time of the claimed violation. See Davis v. Scherer, 468 U.S. 183, 197 (1984) ("A plaintiff who seeks damages for violation of constitutional or statutory rights may overcome the defendant official's qualified immunity only by showing that those rights were clearly established at the time of the conduct at issue."); Sherwood v. Mulvihill, 113 F.3d 396, 399 (3d Cir. 1997) ("Where a defendant asserts a qualified immunity defense in a motion for summary judgment, the plaintiff bears the initial burden of showing that the defendant's conduct violated some clearly established statutory or constitutional right.").

In this case, we cannot conclude that Mr. Moyer is entitled to qualified immunity. As we stated in our prior Memorandum Opinion:

> The right of individuals to record public police activity has been clearly established within the Third Circuit since 2017. See Fields v. City of Philadelphia, 862 F.3d 353, 359 (3d Cir. 2017) ("recording police activity in public falls squarely within the First Amendment right of access to information"). In upholding this right, Fields ruled that:
>
>> The First Amendment protects the public's right of access to information about their officials' public activities. It "goes

> beyond protection of the press and the self-expression of individuals to prohibit government from limiting the stock of information from which members of the public may draw."

> Id. (quoting First Nat'l Bank of Bos. v. Bellotti, 435 U.S. 765, 783 (1978)) (emphasis added). This holding does not distinguish between the actions of law enforcement and other government officials; rather, the Fields court openly acknowledged the applicability of its ruling to all "government" officials, regardless of position. Id.; see also Karns v. Shanahan, 879 F.3d 504, 524 n.12 (3d Cir. 2018) (granting qualified immunity to transit officers but noting that the challenged conduct of prohibiting recording of police activity occurred before Fields); Contreras v. Conrad, No. 3:17-CV-02360, 2020 WL 2193429, at *10 (M.D. Pa. May 6, 2020) (same).

(Doc. 23, at 14-15).

Here, Moyer asserts that because Aguilar was interfering with police activity, her right to record the police activity was not clearly established. However, reaching this conclusion would require us to accept as true Mr. Moyer's version of events—that Aguilar physically interfered in the arrest of Figueroa and that Mr. Moyer physically intervened to protect the officer. This we cannot do, as Ms. Aguilar's version of events differs from Mr. Moyer's at this juncture in that she claims to have only been attempting to retrieve the phone, and that she did not physically interfere in the arrest. Moreover, Mr. Moyer's contention that the video evidence undisputedly supports his position mischaracterizes this video evidence. Rather, as we have explained, the entire struggle was not captured on the dash cam or cellphone video, and all we are left with is the audio recording. Viewing the evidence in a light favorable to Aguilar as the nonmovant, we find that a factfinder could conclude that

Aguilar did not physically interfere with the arrest, and thus, she was engaged in a clearly established protected activity when she was attempting to record her husband's arrest.

We reach a similar conclusion with respect to the merits of Aguilar's First Amendment claim. Indeed, we have established that a factfinder could conclude that Aguilar was engaged in protected activity when she attempted to record her husband's arrest. Further, Mr. Moyer's alleged actions—physically trying to take Aguilar's phone from her—would be sufficient to deter a person of ordinary firmness from exercising her rights. See e.g., Landis v. Bishop, 2014 WL 12775672, at *7 (M.D. Pa. Sept. 14, 2014) (finding that the threat of physical violence was sufficient to meet this element of a retaliation claim); Van Deelen v. Johnson, 497 F.3d 1151, (10th Cir. 2007) (holding that allegations of physical and verbal intimidation, if true, are sufficient to deter a person of ordinary firmness from exercising his rights).

Finally, we conclude that a trier of fact could find that Mr. Moyer's actions were causally connected to Aguilar's attempts to record the arrest. In order to establish a causal connection, "a plaintiff must prove h[er] protected conduct was a ' "substantial" or "motivating factor" in the alleged retaliatory conduct.'" Myers v. City of Wilkes-Barre, PA, 448 F.Supp.3d 400, 416 (M.D. Pa. 2020) (internal citations omitted). A plaintiff may establish this element by showing "(1) an

'unusually suggestive temporal proximity' between the [protected activity] and the alleged retaliatory conduct; (2) a 'pattern of antagonism coupled with timing'; or (3) that the 'record as a whole' permits the trier of fact to infer causation." McAndrew, 183 F.Supp.3d at 737 (quoting DeFlaminis, 480 F.3d at 267).

Here, we find that a reasonable trier of fact could infer causation from the record as a whole. As we have noted, the struggle that ensued between Officer Moyer and Figueroa, including Aguilar's involvement in the struggle, is entirely in dispute. For her part, Aguilar contends that she did not, in fact, intervene in the arrest, but that she was merely attempting to grab Figueroa's phone so that she could record the arrest. She claims that once she was able to get the phone, Mr. Moyer physically intervened and attempted to take her phone to stop her from recording. While Mr. Moyer disputes that he tried to take the phone, as we have explained, the struggle, as well as the interaction between Mr. Moyer and Aguilar, was not caught on video but occurred off-camera, with only audio recording preserved. Thus, any resolution of the disputes replete throughout this factual narrative must be left to a factfinder and may not, at this juncture, be decided as a matter of law.

We reach the same conclusion with respect to Mr. Moyer's contention that he would have taken the same action regardless of any protected activity. See McAndrew v. Bucks Cty. Bd. of Commissioners, 183 F.Supp.3d 713, 738-39 (E.D. Pa. 2016). Given the unresolved factual disputes surrounding the encounter between

Aguilar and Mr. Moyer, summary judgment on this retaliation claim would be inappropriate.

### 3. **Factual Disputes Preclude Summary Judgment on the State Law Battery Claim.**

Finally, Mr. Moyer contends that he is entitled to summary judgment on Aguilar's state law battery claim. Under Pennsylvania law, "[a] battery is defined as a 'harmful or offensive contact' with the person of another," C.C.H. v. Philadelphia Phillies, Inc., 940 A.2d 336, 340 (Pa. 2008) (quoting Dalrymple v. Brown, 701 A.2d 164, 170 (Pa. 1997)), and requires such contact as an element of this tort. Thus, "[b]attery requires proof that the defendant acted with the intent to cause harmful or offensive bodily contact with the person of the plaintiff and that such contact actually followed." Dull v. W. Manchester Twp. Police Dep't, 604 F. Supp. 2d 739, 754 (M.D. Pa. 2009).

Here, Mr. Moyer contends that any contact he had with Aguilar is privileged because such contact occurred in defense of a third person—Officer Moyer. Indeed, in Pennsylvania, a person is permitted to use force in defense of a third person if "the actor believes that his intervention is necessary for the protection of such other person." 18 Pa. Cons. Stat. § 506(a)(3). However as we have discussed, the entire encounter between Aguilar and Mr. Moyer is disputed, and there is no evidence in the record from which we could conclude as a matter of law that Mr. Moyer's actions were taken in defense of Officer Moyer. Indeed, the video evidence does not

22

conclusively show that Aguilar physically intervened in the arrest such that Mr. Moyer would have been justified in thinking it was necessary to use force to protect Officer Moyer. Thus, in order to grant summary judgment on this claim we would have to credit Mr. Moyer's version of events over Ms. Aguilar's, something we cannot do at the summary judgment stage. Instead, such a determination must be made by a trier of fact. Accordingly, Mr. Moyer is not entitled to summary judgment on Aguilar's state law battery claim.[4]

## IV.  **Conclusion**

For the foregoing reasons, the defendant's motion for summary judgment (Doc. 36) will be DENIED.

An appropriate order follows.

*S/ Martin C. Carlson*
Martin C. Carlson
United States Magistrate Judge

DATED: January 26, 2023

---

[4] We reach the same conclusion with respect to Mr. Moyer's argument that he is entitled to official immunity under 42 Pa. Cons. Stat. § 8546(1)(2).